233 So.2d 219 (1970)
A.K. McINNIS, Jr., Inc.
v.
SOUTHEASTERN AUTOMATIC SPRINKLER CO., Inc., a Corp.
No. 45671.
Supreme Court of Mississippi.
March 16, 1970.
Rehearing Denied April 13, 1970.
*220 Zachary, Weldy & Ingram, Hattiesburg, for appellant.
Riddell & Dabbs, Quitman, for appellee.
SMITH, Justice.
Southeastern Automatic Sprinkler Co., Inc., recovered a judgment in the Circuit Court of Clarke County against A.K. McInnis, Jr., Inc., in the sum of $33,155.89, and the latter appeals.
Southeastern's declaration alleged that McInnis was the general contractor in the construction of a factory building, that Southeastern had subcontracted from McInnis, and had performed, that part of the general contract providing for the installation of a sprinkler system, and that McInnis had failed to pay therefor. Also made defendant was Southern Household Products Co., Inc., the prospective occupant of the building, upon the alternative theories that it was either liable primarily or had orally guaranteed that McInnis would pay Southeastern.
Separate answers were filed by McInnis and Southern Household.
In its answer, McInnis admitted that it had been the "overall contractor on the job" and that it had supervised the installation of the sprinkler system by Southeastern. It admitted that it had not paid Southeastern because, it said, Southeastern had "not finished its job," and that, McInnis, therefore, as general contractor, had not been paid for the job by the owner. Further answering, McInnis said that it had "been trying to get (Southeastern) to complete its sprinkler system job for the past three or four months." Nevertheless, it denied that it had contracted to sublet the sprinkler job to Southeastern, and denied that it was liable to Southeastern "on any written or verbal contract."
Upon the trial, Southern Household went out of the case on a directed verdict at the close of the evidence offered by the plaintiff. The case then was submitted to a jury as to the liability of McInnis to Southeastern and as to this, the jury returned a verdict for Southeastern.
On appeal, McInnis assigns a number of grounds for reversal, the chief of which appears to be that the written proposal, embodying the contract for the installation of the sprinkler system, which had been submitted and carried out by Southeastern, was never manually or otherwise signed by anyone for McInnis and, therefore, was not binding upon McInnis.
The evidence tended to show that McInnis, as general contractor, was seeking proposals for the installation of the sprinkler system, as shown on the plans and specifications of the building, and that Southeastern's written bid was $9,000.00 less than the next low bidder. It appears that the proposal, by mistake, was first addressed to Southern Household, and that the manager of that concern called attention to the error and suggested to Southeastern *221 that the bid be sent on to McInnis, the general contractor. This was done by deleting the name Southern Household and substituting that of McInnis. As so amended it was transmitted to McInnis.
McInnis admitted receiving the proposal, that it had sent a purchase order to Southeastern, had requested from Southeastern a laborers' and materialmen's payment bond and a certificate of workmen's compensation and public liability insurance. It admitted supervising the work of installing the sprinkler system and that Southeastern had not been paid. It averred, however, that Southeastern's work in installing the system had not been completed but admitted that Southeastern would have been entitled to the bid amount of $28,449.00, if the job had been completed.
The proposal in question contained a provision for an additional sum of 10% as attorneys' fees, if legal proceedings should become necessary to enforce payment. This document never was actually signed by anyone for McInnis, but the evidence, including a considerable volume of correspondence between Southeastern and McInnis, about the matter, was sufficient to support a finding that it was treated and acted upon by both parties as if, in fact, it had been formally executed.
McInnis charged that the installation was not complete because sprinklers had not been installed in two small rooms. Southeastern countered that the plans and specifications did not call for such installation. Also, it was shown that no bond had ever been supplied by Southeastern, but it is not suggested that there are any outstanding claims for labor or materials in connection with the job.
McInnis claims that it was entitled to have the jury instructed peremptorily to find in its favor, or if mistaken in that position, that the jury's verdict was against the great weight of the evidence.
A careful review of the evidence in the record, of which there was a great deal, both oral and documentary, reflects that it was ample to withstand appellant's motion for a directed verdict, as well as its request for a peremptory instruction, and to require submission of the issues to a jury for determination. Moreover, the jury's verdict for Southeastern was not against the great weight of the evidence.
The jury was warranted in concluding from the evidence that, although no actual signature was ever affixed by appellant to the contract, it had the binding force of an agreement through a mutuality of consent of both parties, notwithstanding this omission, particularly in the light of the correspondence and of the admissions in the pleadings. We think the evidence is clear and convincing that both parties acted upon it exactly as if it had been executed with all formality.
17 C.J.S. Contracts § 62 (1963) contains this statement:
Ordinarily one of the acts forming part of the execution of a written contract is the signing of it, and the mere fact that a written instrument purports to be an agreement does not constitute it a binding contract where it is not signed. However, signature is not always essential to the binding force of an agreement, and whether a writing constitutes a binding contract even though it is not signed or whether the signing of the instrument is a condition precedent to its becoming a binding contract usually depends on the intention of the parties. The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, as, for example, by the acts or conduct of the parties.
In the absence of a statute or arbitrary rule to the contrary, an agreement need not be signed, provided it is accepted and acted on, * * * or delivered and acquiesced in. Moreover, the parties may agree to be bound by their written contract even though it is not signed by either of them, or when it is signed by only one of them.
*222 In 17 C.J.S. Contracts § 58 (1963) it is said:
A contract need not be contained in a single writing; it may be collected from several different writings which do not conflict with each other and which, when connected, show the parties, subject matter, terms, and consideration * * *.
In Fanning v. C.I.T. Corporation, 187 Miss. 45, 52, 192 So. 41, 43 (1939) this Court said:
The rule is that acceptance of a contract as binding upon a party may be shown by his actions, and any definite and unequivocal course of conduct disclosing that the party has acceded or assented to it, is as binding on him as had he endorsed his assent in formal writing. And although he may have stipulated that the contract shall not be binding on him until formally accepted by him in writing, that stipulation may be waived by him and is waived when he acts upon and under the contract by conduct of the nature aforementioned. 1 Restatement Contracts, § 21 et seq. The conduct of appellee, as shown by the undisputed testimony, brings the contracts within the stated rule.
The rule in Fanning recently was cited with approval and discussed in some detail by this Court in Old Equity Life Insurance Company v. Jones, 217 So.2d 648 (Miss. 1969).
The evidence was sufficient here to support a finding by the jury that, in all respects, both parties acted upon the contract as if, in fact, it had been duly signed.
Also, there can be little question that Southeastern substantially performed the work in accordance with the plans and specifications, and that, in so doing, they worked under the direct supervision of McInnis, the general contractor. The fact that Household Products may not have paid McInnis for this item does not constitute a defense, as far as McInnis is concerned as against its subcontractor's claim for payment. The failure of Southeastern to provide the bond obviously was waived, and, in any event, since there has been no suggestion that there are any outstanding workmen's or materialmen's claims the omission of Southeastern to supply the bond has proved of no consequence.
We have examined the instructions to the jury of which appellant makes complaint and have reached the conclusion that the jury was properly instructed, in the light of the factual circumstances in evidence, and that the instructions were not misleading when read together.
The contract contained a provision for attorneys' fees and it was not error to permit the recovery of such fees by Southeastern.
We find no reversible error in the record and the judgment appealed from will be affirmed.
Affirmed.
ETHRIDGE, C.J., and RODGERS, BRADY and PATTERSON, JJ., concur.