# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00667-COA

**TAYLOR MADE SMILES, PLLC**                                            **APPELLANT**

**v.**

**FRANKLIN COLLECTION SERVICE, INC.**                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/29/2016 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MARK NOLAN HALBERT |
| | STEPHEN JOSEPH CRAMBLITT, JR. |
| ATTORNEY FOR APPELLEE: | MARTHA BOST STEGALL |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 08/08/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., CARLTON AND WESTBROOKS, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     This appeal arises from the collection of a debt.  Franklin Collection Service Inc. ("Franklin") was hired by Taylor Made Smiles PLLC ("Taylor Made") to collect on an outstanding patient account held by Taylor Made.  Two payments were made on the patient's account but were returned.  Before confirming the receipt of payment, Franklin submitted payment to Taylor Made.  When Franklin discovered that the payment was returned, Franklin requested that Taylor Made return the account payment that was mistakenly made.  Taylor Made refused to return the payment, and Franklin sued Taylor Made for breach of contract and unjust enrichment in the Lee County County Court.  The county court ordered Taylor Made to return the account payment to Franklin plus eight percent interest.  Taylor Made

appealed the verdict to the Lee County Circuit Court, which affirmed the order of the county court. Taylor Made now appeals. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Taylor Made, a dental-service provider, hired Franklin to perform collection services on Taylor Made's delinquent patient accounts. Taylor Made and Franklin's contract for collection services provided that Franklin would collect certain debts in exchange for the retention of thirty-five percent of the debtors' payments. One of the delinquent accounts assigned to Franklin for collection concerned patient "C.T." C.T. owed Taylor Made $6,900. On March 15, 2008, C.T. paid Franklin a check for $500. According to the contract, the $500 payment would have resulted in a payment of $325 to Taylor Made, after Franklin retained thirty-five percent of the payment for its collection services. However, no payment was made to Taylor Made for its share of the $500.

¶3. On March 25, 2008, the $500 check was returned for insufficient funds. On March 31, 2008, C.T. authorized Franklin to debit her bank account in the amount of $6,315. On April 8, 2008, the payment was rejected by the bank. On April 10, 2008, Franklin sent a check to Taylor Made for $4,104.75, representing the $6,315 less Franklin's thirty-five percent collection fee. Franklin's documentation accompanying the check advised Taylor Made that $6,315 was collected from the debtor. Taylor Made accepted the payment of $4,104.75, without knowledge that the payment had been rejected a few days prior.

¶4. After Franklin learned that the payment had been rejected by the bank, it notified Taylor Made that it would be filing suit against C.T. Franklin also demanded that the

2

payment be returned, because it was mistakenly made. Taylor Made refused to return the amount paid by Franklin, and advised Franklin that its remedy was against C.T. On November 14, 2008, Franklin sued C.T. in court and obtained a judgment against C.T. However, collection efforts were fruitless.

¶5.     On December 21, 2010, Franklin filed a lawsuit against Taylor Made in the county court. Franklin contended that the payment made to Taylor Made was due to a mistake of fact. Franklin further asserted that Taylor Made's refusal to return the $4,104.75 payment constituted a breach of contract, amounting to unjust enrichment. Taylor Made asserted that Franklin could not substantiate a breach-of-contract claim, because the contract did not address the issue. Taylor Made also asserted that the equitable remedies sought by Franklin under a "mistake in fact" were not applicable to Franklin's case. On July 1, 2013, the county court issued its ruling in favor of Franklin in the amount of $4,104.75, plus post-judgment interests and court costs.

¶6.     Taylor Made filed a motion for reconsideration, which the county court denied. Thereafter, Taylor Made filed its notice of appeal in the circuit court. On February 29, 2016, the circuit court issued its opinion affirming the judgment of the county court. In its opinion, the circuit court surmised that since Franklin never collected payment from C.T., no collection occurred. The circuit court found that since collection did not occur, Franklin was not under any obligation to remit payment to Taylor Made. As a result, the circuit court affirmed the ruling of the county court. Taylor Made now appeals the decision of the circuit court, contending that there was no legal basis for the county-court and circuit-court

3

decisions, and Taylor Made's refusal to return the payment to Franklin was not a breach of contract. Taylor Made further asserts that the circuit court misconstrued its interpretation of the contract when the court found that equitable principles applied to a contract matter. Finding no error, we affirm the judgment of the circuit court.

## STANDARD OF REVIEW

¶7.     "A de novo standard of review is applied to questions of contract construction." *Epperson v. SOUTHBank*, 93 So. 3d 10, 16 (¶16) (Miss. 2012). "If a contract is not ambiguous, it must be enforced as written." *Id.* at (¶17). "An instrument that is clear, definite, explicit, harmonious in all its provisions, and is free from ambiguity will be enforced." *Zumwalt v. Jones Cty. Bd. of Sup'rs*, 19 So. 3d 672, 685 (¶58) (Miss. 2009) (internal quotations marks omitted). "The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." *Epperson*, 93 So. 35 at 16-17 (¶18) (internal citations omitted).

¶8.     Unjust enrichment is an equitable claim and is defined as:

> Money paid to another by mistake of fact, although such mistake may have been caused by payor's negligence, may be recovered from the person to whom it was paid, in an action for money had and received. The ground on which recovery is allowed is that one receiving money paid to him by mistake should not be allowed to enrich himself at the expense of the party who paid the money to him by retaining it, but in equity and good conscience should refund it. In order that this rule may apply, the party to whom the payment mistake was made must be left in the same situation after he refunds it as he would have been left had the payment to him not been made.

*Willis v. Rehab Solutions PLLC*, 82 So. 3d 583, 588 (¶14) (Miss. 2012).

¶9.     "The law is clear that unjust enrichment applies when one party has mistakenly paid

another party." *Id.* However, "[u]njust enrichment applies in situations where no legal contract exists, and the person charged is in possession of money or property which, in good conscience and justice, he or she should not be permitted to retain, causing him or her to remit what was received." *Id.*

## DISCUSSION

I. **Whether the circuit court erred by requiring Taylor Made to repay funds received from Franklin.**

¶10. Taylor Made asserts that the county court's and circuit court's decisions were manifestly wrong because equitable principles cannot apply where there is an express and enforceable contract. The county court found that Franklin's payment to Taylor Made was analogous to *Milliken & Michaels Inc. v. Fred Netterville Lumber Co.*, 676 So. 2d 266 (Miss. 1996). In *Milliken,* a collection company, Milliken & Michaels, was hired by Fred Netterville Lumber Co. to collect funds for delinquent accounts. Milliken was successful in its collection efforts and remitted two $5,000 payments to Netterville. However, the second payment was mistakenly made to Netterville, though the check clearly indicated that it was intended as a payment for another delinquent account. Milliken sought return of the second payment based on the theory of unjust enrichment. However, the Mississippi Supreme Court found that the theory of unjust enrichment was not clear-cut since Netterville was entitled to payments. *Id.* at 269. Nevertheless, the court found that the payment should have been returned since it was mistakenly made to Netterville. *Id.* The court held that the debtor had a right to choose which account to remit payment to, and it was clear that the payment was intended for another account. *Id.*

¶11. Here, the county court found that *Milliken* was the controlling standard in the case and ruled that both the law and equitable principles derived from *Milliken* weighed in Franklin's favor. Therefore, the county court asserted that Taylor Made should have returned the payment to Franklin since it was mistakenly made. Though we find that Franklin mistakenly made the payment to Taylor Made, the *Milliken* case was not the controlling standard for this matter.

¶12. *Milliken* is distinguishable from this case because Taylor Made had no knowledge of Franklin's mistake, and there was nothing to indicate that Franklin made a mistake at the time it remitted payment. Franklin remitted payment to Taylor Made under the belief that C.T. satisfied the debt obligations to Taylor Made, though the bank rejected C.T.'s payment a few days prior to Franklin tendering payment. Franklin filed suit under the theories of unjust enrichment and mistaken payment.

¶13. However, "[t]he law is clear that unjust enrichment applies when one party has mistakenly paid another party." *Willis*, 82 So. 3d at 588 (¶14). "Unjust enrichment applies in situations where no legal contract exists, and the person charged is in possession of money or property which, in good conscience and justice, he or she should not be permitted to retain, causing him or her to remit what was received." *Id.* The *Milliken* decision does not apply to this matter since there was a contract controlling the matter, though the contract was silent as to the matter before the court.

¶14. The circuit court affirmed the county court's decision on different grounds. The circuit court opined that Franklin mistakenly delivered a check representing a portion of

6

collected proceeds that it never actually collected. However, the circuit court did not find that it was a mistaken payment. The circuit court found that since no collection had occurred, Franklin was under no contract or obligation to pay Taylor Made money it never collected. Taylor Made argues that the circuit court improperly modified or altered the contract in favor of Franklin by defining the collection of a debt. After careful review of the record, we agree that Taylor Made should have returned the mistaken payment to Franklin. Accordingly, we find no error.

**II.** **Whether Taylor Made breached the contract by retaining funds mistakenly paid to it.**

¶15. Taylor Made argues that it had no contractual duty to return the mistaken payment made by Franklin. Taylor Made asserts that the four corners of the contract support its contention that it had no contractual duty to return any payment it received from Franklin. Taylor Made maintains that the form contract failed to define what amounts to "collected" debt or money received. As a result, Taylor Made contends that the contract is ambiguous, and the ambiguity should be construed in its favor. We disagree. "Silence on a subject does not create an ambiguity within a contract." *Facilities Inc. v. Rogers-Usry-Chevrolet Inc.*, 908 So. 2d 107, 115 (¶20) (Miss. 2005) (quoting *Lyon Dev. Co. v. Business Men's Assur. Co. of Am.*, 76 F.3d 1118, 1124 (10th Cir. 1996)).

¶16. Franklin argues that since the contract does not address repayment of funds that are ultimately dishonored by a bank, equitable principles should apply. The four corners of the contract are silent as to the remittance of a mistaken payment that was eventually dishonored. Nevertheless, the absence of a contractual provision governing a dispute does not necessarily

7

equate to ambiguity in favor of the nondrafter. "Where a contract is silent as to one of its terms, the court is not bound to adopt a construction which is not compelled by the instrument and which no man in his right mind would have agreed to." *Tupelo Redev. Agency v. Abernathy*, 913 So. 2d 278, 284 (¶14) (Miss. 2005) (citing *Fraizer v. Ne. Miss. Shopping Ctr. Inc.*, 458 So. 2d 1051, 1054 (Miss. 1984)).

¶17.    In *Tupelo Redevelopment Agency* an urban-renewal agency, TRA, filed condemnation suits against landowners, which resulted in settlement agreements providing that the purchase price for each tract of land would be determined by appraisal. The first appraisal valued properties at $925,000, as a result of accounting for TRA's improvements to the properties surrounding the condemned parcels. TRA disputed the first apprisal and demanded that a subsequent appraisal be made, excluding improvements to surrounding lands. The landowners filed a motion to enforce, seeking to bind the agency to the settlement agreement based upon the first appraisal. The trial court denied that motion, as well as the agency's motion to enforce the second appraisal, finding that the landowners should not have expected the fair market value of the properties to include the value of TRA's improvements. As a result, the trial court ordered a third appraisal. The Mississippi Supreme Court affirmed that decision, finding that there was no indication that TRA would ever have expressly agreed to a contract that provided the value of the subject property would include the valuation of TRA's improvements. *Id.*

¶18.    Though ambiguity in contract inures to the benefit of the nondrafter, this contract is not ambiguous, or confusing, as to the terms of remittance. It is simply silent and does not

address the return of a mistaken payment.  If Franklin had anticipated the circumstances that were the subject of its cause of action, it would have never agreed to the nonreturn of a mistaken payment that it never actually collected.  Finding no error, we affirm the decision of the circuit court.

¶19.    **AFFIRMED.**

      **LEE, C.J., IRVING, P.J., CARLTON AND FAIR, JJ., CONCUR.  GRIFFIS, P.J., WILSON AND GREENLEE, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. BARNES AND ISHEE, JJ., NOT PARTICIPATING.**