# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00945-COA

**ROBERTS CONTRACTING INC. AND**                              **APPELLANTS/**
**FIDELITY & DEPOSIT COMPANY OF**                              **CROSS-APPELLEES**
**MARYLAND**

**v.**

**MERSINO DEWATERING INC.**                                   **APPELLEE/**
                                                              **CROSS-APPELLANT**

DATE OF JUDGMENT:              05/11/2016
TRIAL JUDGE:                   HON. ROBERT P. CHAMBERLIN
COURT FROM WHICH APPEALED:     DESOTO COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:      STEPHEN FRED LIBBY
                               ADAM M. NAHMIAS
ATTORNEYS FOR APPELLEE:        CHRISTOPHER DANIEL MEYER
                               BRADLEY BARRON VANCE
NATURE OF THE CASE:            CIVIL - CONTRACT
DISPOSITION:                   AFFIRMED AS MODIFIED: 09/25/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**TINDELL, J., FOR THE COURT**:

¶1.     This appeal concerns a construction-contract dispute between Roberts Contracting Inc. (RCI) and Mersino Dewatering Inc. (MDI).  RCI appeals the DeSoto County Circuit Court's holding that RCI's contractual breaches entitled MDI to damages and prejudgment interest.  MDI's cross-appeal concerns the failure of the circuit court to delineate the method for calculating prejudgment interest.  Our review reveals no error in the circuit court's determination of the contractual dispute between the parties.  The only modification we find necessary is in the circuit court's order regarding the type and amount of prejudgment interest

awarded by the judgment. Therefore, we affirm and, applying longstanding tenets of contract law, modify the order with our determination that the prejudgment interest applicable to the judgment shall be computed as simple interest at the interest rate of 1.5% per annum from the date of the breach (March 18, 2010).

## FACTS

¶2. DeSoto County Regional Utility Authority (the Authority) required the Walls-Lagoon Project for improvement and expansion of a portion of DeSoto County's regional sewer system. Phase two of the Walls-Lagoon Project included, among other things, the trenching for and installation of approximately 11,300 lineal feet of sewer line several feet below the ground surface in Walls, Mississippi.

¶3. RCI served as the Authority's general contractor on the project and installed the subsurface-mainline-sewer pipe on the project. Due to the project's proximity to certain bodies of water, a necessary component of the project was dewatering. RCI's commencement and completion dates relied upon proper dewatering. Dewatering is the act of removing ground water from a specified area to lower the natural water table.

¶4. MDI prepared and sent RCI a proposal for the dewatering aspects of the project. RCI accepted MDI's dewatering contract (MDI contract), and RCI returned the executed MDI contract to MDI. The price provision of the MDI contract was as follows:

> Mainline Sewer Dewatering - [MDI] will install deepwells for approximately 11,300 lineal feet of sewer at a per foot cost of $55[ ] per foot for deepwells [seventy] feet deep with a minimum charge of 1,000 lineal feet per mobilization. Each individual system (approximately 1,000 feet per system) will be provided for up to [six] weeks, after which time each well will [be] provided at a rental rate of $600[ ] per well per week. Generators will be

2

provided at.[1]  A mob/demob fee of $6,750[ ] each way will be charged at the start and completion of the job.  This puts the total for the project at a cost of $635,000[ ] with[]out overruns on the equipment.  In the event that the footage is increased, the $55[ ] per foot price will be applied to that.

The MDI contract further contained a detailed scope of work that delineated the responsibilities of both MDI and RCI separately in multiple-bullet point descriptions, which included but were not limited to the following:

> **[MDI] will be responsible for** . . .
>> [d]elivery of equipment to job site . . .
>> [d]rilling and developing wells . . .
>> [g]enerator and electrical distribution to power the dewatering system, . . .
>> [d]emobilization of equipment upon completion . . . [, and]
>
> **[RCI] is responsible for** . . .
>> [a]ll fuel required for the operation of the dewatering system . . .
>> [a]ssistance in loading of equipment on [MDI] trucks upon project completion. . . .

¶5.    Thereafter, RCI submitted an Associated General Contractors subcontract (RCI subcontract) with a general scope-of-work paragraph and general overall-pricing provision for the sum of $635,000 to MDI.  This sum comports with the MDI contract's calculated cost of 11,300 linear feet of dewatering at fifty-five dollars a foot added to an equipment mobilization cost of $6,750 and a demobilization cost of $6,750.  Adding to RCI's subcontract, MDI incorporated, by handwritten notation, the detailed scope-of-work provisions from the previously executed MDI contract.  MDI executed the RCI subcontract

---

[1] This sentence "Generators will be provided at." omits the weekly rental price of generators and is herein quoted just as incomplete as in the MDI contract.  The parties on appeal and the circuit court agreed that this omission entitled RCI to the use of generators at no additional charge.

on or about May 12, 2009.[2] Together, these two documents form the contract between the parties for the dewatering aspects of the project.

¶6. In addition to the dewatering, MDI provided certain pumps and accessories (trash pumps) as rentals for use on the project to RCI. Those trash pumps allowed the pumping of sewage and solids on the project. There was no signed written agreement between the parties regarding the trash pumps. But, the parties operated in accord with the payment provisions of a trash-pumps rental proposal forwarded to RCI prior to the start of MDI's subcontract work.

¶7. Between late May and early June 2009, MDI mobilized on site at the project. From July 24, 2009 until February 2010, MDI provided dewatering-related labor, services, and equipment, along with rental trash pumps. Per the specifications of the project itself, the dewatering operation was to lower and maintain the water table at least five feet below the bottom of the pipe-trench excavation (required level). RCI could not begin installing mainline sewer pipe until that required level was reached. On July 29, 2009, the parties met with Waggoner representatives to discuss delays due to flooding, the amount of rain on the project site, and the slow pace at which the water table was being drawn down. As a result, MDI installed an additional well to aid the dewatering to reach the required level and allow RCI to begin installing mainline pipe. MDI installed and provided this additional work and equipment at no charge.

---

[2] RCI denies receiving the signed subcontract from MDI with the handwritten notation incorporating MDI's delineated scope-of-work provision, but work began under that subcontract and, for the most part, in conformance with the MDI contract's scope of work.

4

¶8.    Waggoner determined when RCI could begin installing mainline pipe and whether MDI had reached the required level. Eventually, Waggoner determined that MDI met the required level in September 2009 but did not permit RCI to begin laying mainline pipe on the project until October 1, 2009. Despite multiple delays to RCI's scope of work, RCI completed the project on time and was not assessed penalties or damages by the Authority for untimely performance.

¶9.    RCI contends the terms of the MDI contract, particularly the payment terms regarding the use of each deepwell system beyond six weeks, should not be enforced. But, Cotton Roberts, RCI's president, testified that RCI provided the fuel on the project because it was required of RCI pursuant to the scope-of-work provision in the MDI contract. Roberts also testified that the governing agreement between the parties was a unit-price contract as stated in the price-quotation portion of the MDI contract rather than the general overall-price provision in the RCI subcontract. Additionally, the parties performed as detailed in the MDI contract's scope-of-work provision: MDI provided deepwells for dewatering; RCI paid fifty-five dollars per lineal foot of sewer-pipe laid in those dewatered areas; MDI provided generators to power the dewatering system; MDI mobilized and demobilized the equipment needed; and MDI forwarded detailed invoices on a regular basis to RCI.

¶10.    For the dewatering work and trash-pump rentals, RCI paid MDI a total of $612,448. MDI claimed it was owed an additional $117,690.30. Following a two-day bench trial on December 16-17, 2015, the circuit court entered judgment in favor of MDI in the amount of $67,579.

**STANDARD OF REVIEW**

¶11.   "The standard of review for questions concerning the construction of contracts are questions of law that are committed to the court rather than to the fact-finder." *Fairchild v. Bilbo*, 166 So. 3d 601, 605 (¶9) (Miss. Ct. App. 2015) (quoting *Cherry Bark Builders v. Wagner*, 781 So. 2d 919, 921 (¶5) (Miss. Ct. App. 2001)).   "Appellate courts review questions of law de novo." *Id*.

¶12.   This Court must defer to the circuit court's factual determinations when they are supported by substantial evidence unless the circuit court abused its discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard.  *Covington County v. G.W.*, 767 So. 2d 187, 189 (¶4) (Miss. 2000) (quoting *Church of God Pentecostal Inc. v. Freewill Pentecostal Church of God Inc.*, 716 So. 2d 200, 204 (¶15) (Miss. 1998)).

**DISCUSSION**

¶13.   On appeal, RCI raises six points of error:  (1) failure of the circuit court to properly interpret and enforce the multiple contracts between the parties; (2) the circuit court's finding breach on the part of RCI; (3) the circuit court's award of damages to MDI; (4) the circuit court's denial of RCI's motion in limine to exclude certain damage testimony; (5) the circuit court's award of prejudgment interest to MDI; and (6) the trial court's failure to rule on RCI's affirmative defenses.  MDI cross-appealed on the issue of calculating prejudgment interest.

**I.      The Circuit Court Properly Interpreted and Enforced the Contracts Between RCI and MDI.**

¶14.   The parties agree that the MDI dewatering contract of May 8, 2009 and the RCI

6

subcontract of May 12, 2009 constitute a contractual agreement for dewatering of the project site. Separately, the circuit court found the parties entered into a second contract for the rental of trash pumps for the pumping of solids. On this issue, the parties agree there was no executed written agreement regarding the rental of the trash pumps. But, "parties may agree to be bound by their written contract even though it is not signed by either one of them, or when it is signed by only one of them." *McInnis v. Se. Automatic Sprinkler Co.*, 233 So. 2d 219, 221 (Miss. 1970) (quoting 17 C.J.S. Contracts § 62 (1963)). The record shows that MDI provided, and RCI utilized and paid for, at least two trash pumps and related accessories between June 2009 to January 2010. MDI's provision of trash pumps and accessories, and RCI admitted use of and payment for those pumps, reflects the parties's agreement to be bound by the MDI trash-pump proposal.

II.     **The Payment Terms in the Dewatering Contract Regarding the Use of each Deepwell System Beyond Six Weeks Was Clear and Unambiguous.**

¶15.    RCI's issue with the circuit court's interpretation of the contracts concerns: (1) a conflict about the terms and conditions of RCI's dewatering contract with the Authority and the specific terms and conditions of MDI's dewatering subcontract with RCI; and (2) the application of the MDI subcontract-payment terms to the actual services and equipment MDI provided.

¶16.    In interpreting contracts, courts generally first determine whether the express wording of the contract is ambiguous. *Miss. Comm'n on Envtl. Quality v. Bell Utils. of Miss. LLC*, 135 So. 3d 868, 878 (¶27) (Miss. 2014). Only then if that wording is ambiguous do we

7

construe the wording against its drafter. *Miss. Comm'n on Envtl. Quality*, 135 So. 3d at 878 (¶27).

¶17.    The MDI contract defines an individual system to be approximately 1,000 feet of installed deepwell for dewatering. The MDI contract-price quotation is listed at an expected 11,300 lineal feet and $55 per lineal foot for deepwell-system installation and six weeks of use. After six weeks of use, the MDI contract lists each system's rental cost for use thereafter at a rental rate of $600 per deepwell system per week. Mobilization and demobilization was set to cost $6,750 each way. The MDI contract delineates that, at this pricing, and including regular preventative maintenance, the total cost of the project is set to be $635,000[3] "without overruns on the equipment." The MDI contract further explains that the stated rental rates apply only after the stated initial-use time frame of six weeks. In this contract language, we agree with the circuit court, find no ambiguity, and find no conflict. The MDI contract-description provision states that the price quotation includes the cost of mobilization, installation, equipment, maintenance and demobilization. Because the price provisions are not ambiguous, the circuit court properly enforced the plain meaning of those provisions as written. *Id*.; *McFarland v. McFarland*, 105 So. 3d 1111, 1119 (¶23) (Miss. 2013).

¶18.    RCI's contract with the Authority called for dewatering payments simply on a per-lineal-foot completed basis. MDI's dewatering subcontract with RCI more specifically set forth the respective duties of RCI and MDI and specifically delineated a pricing schedule

---

[3] $635,000 equals 11,300 multiplied by $55 plus the sum of $6,750 multiplied by 2.

based on a six-week time period of use for each dewatering system. Use of any of the individual dewatering systems for any period longer than six weeks, as an overrun, required additional rental payments to MDI per additional week of use.

¶19.   Defining the specific commencement of the time frame for the six-week rental period for each dewatering system constituted a primary dispute between the parties. Marco Mersino, a MDI employee, testified that billing on the dewatering systems began "from the date of pumping." Mersino explained that pumping was required to perform the defined service of "dewatering," and that, in line with typical industry standards, once a system started pumping,[4] the six-week rental period began on that system. Although Mersino testified to communicating that the system rental began upon pumping to "Cotton Roberts and the engineer," Cotton Roberts and Brad Roberts, RCI's vice president, denied being informed that the rental periods for the systems began when the water started pumping. The RCI witnesses testified that they understood the rental period would begin only when the system reached the required level of dewatering.

¶20.   Without a bright-line defined commencement date in the MDI subcontract, we find an ambiguity highlighted in these conflicting views on the MDI dewatering subcontract term for the commencement of the system rental period. The trial testimony seems to provide two reasonable interpretations of the system rental commencement terms. On review, we adhere to long-standing contract law to evaluate the terms of a contract that are subject to more than

---

[4] Mersino likened this to renting a backhoe. The rental time period does not start on a backhoe when the contractor using the backhoe is finished digging a hole; it starts when the backhoe leaves the rental yard.

9

one reasonable interpretation. This is a question properly submitted to the fact-finder. *Royer Homes of Mississippi, Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (¶8) (Miss. 2003). In a bench trial, as here, the fact-finder is the trial judge. The circuit court reviewed the contracts, viewed the witnesses, heard their testimony, and determined that system rental began upon commencement of pumping. Upon review of the circuit court's interpretation of the dewatering payment provisions, we find no error.

### III. RCI Breached the Contract.

¶21. To recover for a breach of a contract, MDI had the burden to prove by a preponderance of the evidence: (1) the existence of a valid and binding contract; and (2) RCI's breach of the contract. *Bus. Commc'ns Inc. v. Banks*, 90 So. 3d 1221, 1225 (¶11) (Miss. 2012). We have discussed the valid and binding contracts that existed between the parties. On this point of error, MDI had the burden at trial to show that RCI breached those contracts in failing to pay for the equipment and services provided. The circuit court's factual findings cover six pages of well-delineated support for its determination that RCI failed to pay certain calculable amounts due to MDI for the equipment and services provided under the contracts.

¶22. After our thorough review of the record and the circuit court's precisely descriptive order, we find the circuit court's factual determination that RCI failed to pay for numerous specific items to be supported by substantial evidence. Therefore, this point of error is without merit.

### IV. The Circuit Court Properly Denied RCI's Motion in Limine Regarding MDI's Business Records.

¶23. RCI's motion in limine to exclude MDI's business records was thoroughly argued by the parties and discussed by the circuit court in the record. RCI argued that MDI's invoices failed to satisfy Mississippi Rule of Evidence 803(6)'s business-records exception requirements.

¶24. Prior to trial, RCI filed a motion in limine to exclude testimony and evidence regarding MDI's damages, specifically: MDI's memorandum of billable charges, a MDI supervisor's workflow drawings, and MDI's invoices (disputed documents). In that motion, at trial and on appeal, RCI argued that this evidence was inadmissible and not in compliance with Mississippi Rule of Evidence 803(6).

¶25. "This Court grants a high degree of deference to the trial court's decision to suppress or admit evidence and will not find error absent a clear abuse of discretion resulting in prejudice." *Cassibry v. Schlautman*, 816 So. 2d 398, 403 (¶17) (Miss. Ct. App. 2001). "Under Rule 803(6), the focus is properly placed on the time period when the documents were created, the trustworthiness of the documents, and whether their creation was in the regular course of business." *Ferguson v. Snell*, 905 So. 2d 516, 519 (¶12) (Miss. 2004).

¶26. The record reveals that the disputed documents were created in the regular course of business by employees of MDI. Marco Mersino, an MDI employee, testified at trial. Mersino had responsibilities for invoicing the projects he oversaw. Mersino testified that the project site superintendent relayed the dewatering system, station number and footage completion information to him. Thereafter, Mersino used that information to created the billable-charges sheet. In turn, Mersino turned in the billable charges to accounting.

11

Accounting then created an invoice that Mersino approved before it was sent to the customer, RCI. Mersino was not the employee on site visually inspecting the progress of the project, but "it is not necessary to call or to account for all participants who made the record." *Miss. Gaming Comm'n v. Freeman*, 747 So. 2d 231, 242 (¶48) (Miss. 1999); *see* M.R.E. 803(6) advisory committee note. "It is only necessary that testimony concerning the source of these documents is offered by an individual with knowledge who is acting in the course and scope of the regularly conducted activity." *Ferguson*, 905 So. 2d at 520 (¶12).

¶27. MDI used this process on the various projects Mersino oversaw. He testified that he created memoranda of billable charges based on information from the site superintendents or project managers of the various jobs. He testified the billable charges documentation on this project was authored and created at or near the time he received the information. Further, he testified that the memoranda of billable charges are documents MDI kept in the course of its regular business activity. Finally, there is nothing in the record to suggest untrustworthiness.

¶28. In compliance with Mississippi Rule of Evidence 803(6) therefore, the circuit court did not abuse its discretion in admitting the MDI memoranda of billable-charge invoicing documentation (memos) and properly denied RCI's motion in limine to exclude them.

## V. The Damage Award is Supported by Substantial Credible Evidence.

¶29. In its judgment, after first determining the contracts under which the parties were operating and that RCI breached those contracts, the circuit court then moved on to a detailed analysis and computation of the damages. Applying our standard of review, the circuit

court's judgment must be affirmed if it is supported by substantial credible evidence. *Thompson ex rel. Thompson v. Lee County Sch. Dist.*, 925 So. 2d 57, 62 (¶7) (Miss. 2006). We "must review the record and accept all evidence that would reasonably support the judgment . . . ." *Donaldson v. Covington County*, 846 So. 2d 219, 227 (¶34) (Miss. 2003) (citing *Yarbrough v. Camphor*, 645 So. 2d 867, 869 (Miss. 1994)). Where there is conflicting evidence, we must give great deference to the circuit court's findings. *McElhaney v. City of Horn Lake*, 501 So. 2d 401, 403 (Miss. 1987).

¶30. The circuit court determined the amount of lineal feet dewatered under the parties' contracts to be 10,963 feet. At $55 per lineal foot, the total owed to MDI by RCI for this work equals $602,965. Because MDI invoiced RCI only $12,750[5] for the separate charges for mobilization and demobilization of this equipment, that is the amount the circuit court awarded. The circuit court specifically determined the amount of time RCI utilized each individual dewatering systems longer than six weeks and allocated the MDI contract price of $600 per system per week to each time period any individual system was overrun. Thus, the total in overruns was calculated to be $37,200. For the trash-pump contract, the circuit court ascertained that MDI was owed a total of $500 for mobilization for each pump used along with $408 rental per day of use. The total owed under trash-pump contract therefore totaled $27,112. In total, RCI owed MDI $680,027 and paid only $612,448. This left a balance due of $67,579. The MDI invoices, charge documents, RCI payment documentation

---

[5] Per the contract the total should have been $6,750 for mobilization and another $6,750 for demobilization (totaling $13,500) but the court awarded MDI only what it invoiced RCI.

and testimony at trial support the circuit court's calculations in detail. Thus, substantial credible evidence supports the amount of damages the circuit court awarded to MDI. The supreme court held in *Greater Canton Ford Mercury, Inc. v. Lane*, 997 So. 2d 198, 206 (¶30) (Miss. 2008), that damage awards are findings of fact that are "only overturned when the trial judge has abused his discretion or in exceptional cases where such awards are so gross as to be contrary to right reason." We find no abuse of the circuit court's discretion, and we do not find the award to be contrary to reason. Accordingly, we affirm the damage award.

## VI. RCI's Affirmative Defenses Issue Is Without Merit.

¶31. RCI claims that two defenses raised in its answer were "affirmative defenses" that required a ruling from the circuit court. But, RCI provides no support for its argument that the circuit court in a bench trial has any duty to sua sponte specifically address a party's affirmative defenses. Under Mississippi law, the burden regarding affirmative defenses is placed squarely on the defendant. It is the defendant who must timely and reasonably raise and pursue the enforcement of any affirmative defense. *Estate of Grimes v. Warrington*, 982 So. 2d 365, 370 (¶22) (Miss. 2008). Our review of the record reflects that the parties were afforded a full and complete opportunity to present their cases and defenses at trial. It further reveals the circuit court's thorough analysis of both the documentary and testimonial evidence presented at trial. The detail in the circuit court's order reflects consideration of the complaints of MDI and the affirmative defenses of RCI.

### A. *RCI's First-Material-Breach Defense*

¶32. RCI explains the first-material-breach affirmative defense to mean that the party to

14

first materially breach "a bilateral contract excuses further performance by the other party." *Favre Prop. Mgmt LLC v. Cinque Bambini*, 863 So. 2d 1037, 1044 (¶20) (Miss. Ct. App. 2004). RCI claims that MDI's first material breach arose from its repeated failures to timely achieve a certain required level of dewatering. Although it is apparent that RCI could not begin its work on the project until a required level was reached, RCI's assertion that MDI owed RCI a duty to reach the required level by a certain date has no support in the record. The MDI contract discussed MDI's duty to sufficiently lower the ground water level, but no date for completion of that part of the dewatering process was set. In fact, in the penultimate paragraph of the MDI contract, the contract expressly states that MDI shall not be held liable for delays. This first-material-breach defense has no support in the record. The terms of the contracts did not impose a duty upon MDI to reach a certain level of dewatering on a certain date. Therefore, the circuit court made no error in effectively denying, by not explicitly addressing, RCI's first-material-breach defense.

B. *RCI's Set-off and Reduction of Damages Defense*

¶33. Although not specifically discussed in the circuit court's order with a rejection or affirmation of RCI's set-off or reduction defense, RCI was in fact given credit by the circuit court for the payments RCI made to MDI. RCI was not charged for the use of generators, and RCI was not charged for certain damage and other charges MDI claimed but not supported with proof. Thus, in granting RCI certain set-offs in the damage calculation, the circuit court properly addressed and applied RCI's set-off or reduction reasoning, to the extent that RCI was entitled to certain set-offs that the circuit court discussed in its detailed

15

order.

## VII. Prejudgment Interest Awarded Is Hereby Modified.

### A. *Liquidated or Unliquidated Damages*

¶34. The term liquidated damages "refers to damages that are set or determined by a contract when a breach occurs. *Moeller v. Am. Guar. & Liab. Ins. Co.*, 812 So. 2d 953, 959 (¶18) (Miss. 2002) (quoting Black's Law Dictionary 395 (7th ed. 1999)). Unliquidated damages "are [d]amages that have been established by a verdict or award but cannot be determined by a fixed formula, so they are left to the discretion of the judge or jury." *Id*. at 959-60 (¶18). The circuit court here used the actual scope-of-work and payment provisions of the parties' contracts to calculate and reconcile mathematically the damage award. This detailed calculation by the circuit court, following the specific terms set forth in the contracts between the parties, reflects the liquidated nature of the damage award. Here, the circuit court did not abuse is its discretion by finding the award was based on liquidated contractual damages.

### B. *Prejudgment Interest Calculation*

¶35. The subject Order of May 11, 2016 provided for interest "at a rate of 1.5% from the date of the breach – i.e. March 18, 2010 (the 31 day following Mersino's submission of the last invoice[)]." The MDI contract provided for interest on unpaid amounts at a rate of 1.5% on unpaid balances that exceed 30 days from the invoice date. Neither the Order nor the Proposal provided whether the interest should be calculated per annum or per month. Given the opportunity to reevaluate the interest issue, the circuit court denied MDI's motion for

16

clarification on the interest issue. It appears from the record that because the notice of appeal by each party preceded the "Motion for Clarification" by five months, the sitting judge who wrote the initial "Order and Opinion" was no longer the judge; the then-sitting judge declined input.

¶36. Mississippi Code Annotated section 75-17-7 (Rev. 2016) requires judgments based on a contract to bear interest at the same rate delineated in the contract. Further, "[t]he general rule is that when interest is allowable, it is to be computed on a simple rather than compound basis . . . ." *McNeel v. Miss. Dept. of Human Servs.*, 99 So. 3d 244, 246-47 (¶7) (Miss. Ct. App. 2012) (internal quotation mark omitted). Because neither the circuit court nor the contracts specified that the interest was to be computed on a compound basis, it is our opinion that the interest should be computed on a simple basis at the 1.5% rate noted in the contract and the circuit court's order. *See id.*

¶37. On the issue of computation on a per annum or per month basis, we look to standard and long-standing contract law. We construe ambiguous or vague terms of a contract against the drafter. *Kight v. Sheppard Bldg. Supply Inc.*, 537 So. 2d 1355, 1358 (Miss. 1989). Mississippi law holds that when the terms of a contract are vague or ambiguous, they are always to be construed more strongly against the party preparing the doubtful textual provisions. *Royer*, 857 So. 2d at 759 (¶39).

¶38. Here, it was MDI who first failed to delineate, in the contract they drafted, the means of calculating the interest called for on unpaid amounts. Further, MDI did not and cannot now provide additional evidence or guidance on terms missing from its own contract.

17

Because we must construe the terms of a contract against the drafter, prejudgment interest should be computed on a simple and per annum basis.

## CONCLUSION

¶39.    The factual findings of the circuit court will not be disturbed on appeal absent a showing that the circuit court was clearly erroneous, was manifestly wrong, or applied an erroneous legal standard.  No such error has been shown.  Our thorough review of the record reveals sufficient testimony and documentary evidence to support the findings of the circuit court.  The only modification we find necessary is in the circuit court's order regarding the type and amount of prejudgment interest awarded by the judgment.  Therefore, we affirm and, applying longstanding tenets of contract law, modify the order with our  determination that the prejudgment interest applicable to the judgment shall be computed as simple interest at the interest  rate of 1.5% per annum from the date of the breach, that is, March 18, 2010.

¶40.    **AFFIRMED AS MODIFIED.**

**GRIFFIS, P.J., BARNES, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR.  LEE, C.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.  IRVING, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., AND WESTBROOKS, J.**

**IRVING, P.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶41.    I agree with the majority opinion except part VII (B), the discussion regarding the interest calculation.  While this Court has jurisdiction to address the interest issue, it is my opinion that we should address only those issues that are properly placed before us by the parties.  Since I believe we are procedurally barred from addressing the issue as to the kind

18

of prejudgment interest and the proper calculation of it, I dissent from that portion of the majority opinion. To fully elucidate my point, a brief discussion of the relevant facts surrounding this issue is necessary.

¶42.   The relevant portion of the circuit court's judgment reads: "Accordingly, pursuant to the terms of the Mersino Proposal, prejudgment interest is awarded at a rate of 1.5% from the date of the breach [,] i.e.[,] March 18, 2010 (the 31st day following Mersino's submission of the last invoice." The relevant portion of Mersino's proposal reads: "The [c]ontractor agrees to pay [i]nterest at a rate of 1.5% on unpaid balances that exceed 30 days from [i]nvoice date."

¶43.   As can be seen from the quotes from both the circuit court's judgment and Mersino's proposal, the nature of the interest—that is, whether it is simple or compound—is not addressed. The majority acknowledges as much with the following statement: "[N]either the circuit court nor the contracts specified that the interest was to be computed on a compound basis . . . ." Majority op. at (¶36).

¶44.   There are two problems with the majority's decision finding "that the interest should be computed on a simple basis at the 1.5% rate noted in the contract and circuit court's order." Majority op. at (¶36). First, the majority says that "[w]e construe. . . [the] terms of a contract against the drafter." Majority op. at (¶37). That is only true if the contract is ambiguous. I take no issue with the fact that any ambiguity in a contract should be construed against the drafter of the contract. However, the parties's contract is not ambiguous or confusing. The contract is simply silent on whether the interest should be computed on a

19

monthly or annual basis and whether it should be compounded. "Silence on a subject does not create an ambiguity within a contract." *Taylor Made Smiles PLLC v. Franklin Collection Service Inc.*, 224 So. 3d 565, 570 (¶15) (Miss. Ct. App. 2017). Further, as this Court said in *Taylor Made Smiles*:

> [T]he absence of a contractual provision governing a dispute does not necessarily equate to ambiguity in favor of the nondrafter. Where a contract is silent as to one of its terms, the court is not bound to adopt a construction which is not compelled by the instrument and which no man in his right mind would have agreed to.

*Id*. at (¶16). (Internal quotation mark omitted) I can think of no good reason why Mersino would have agreed to have the interest on money owed to it computed on a simple, rather than compound, basis.

¶45. Second, even if the contract is ambiguous, the issue is procedurally barred. The judgment appealed from was entered on May 11, 2016. Neither party filed a motion for clarification or modification of the judgment pursuant to Rule 59 of the Mississippi Rules of Civil Procedure. Roberts Contracting filed its notice of appeal on June 9, 2016, and Mersino filed its notice of appeal on June 10, 2016.

¶46. On November 11, 2016, five months after filing its notice of appeal, Mersino filed a motion pursuant to Rule 60 of the Mississippi Rules of Civil Procedure to clarify the court's May 11, 2016 opinion and order, or alternatively, to reopen the evidence for a limited purpose. In the motion, Mersino sought clarification of the circuit court's May 11, 2016 order, noting that the order "fail[ed] to specify whether the stated interest is to be calculated on a monthly or per annum basis." The circuit court denied the motion on April 6, 2017, in

20

an order wherein the court stated:

> In this instance, the Court can and will assume that its omission of the method of interest calculation was inadvertent, being that such is integral to the enforcement of the judgment itself. However, because the original trier of fact in this case is no longer available to provide any insight, the undersigned Circuit Court Judge cannot currently state, with any degree of certainty, which method of interest calculation was intended at the time of the entry of the judgment. The Court accordingly cannot and will not rectify the omission by simply entering a supplemental order.
>
> While the Plaintiff has presented a compelling argument for reopening the case [to] introduce evidence related to the calculation of prejudgment interest, the Court finds that the timing of the request warrants further consideration. Though the transcript and record on appeal have not yet been filed with the Supreme Court, they have been prepared and examined by both parties, and any necessary corrections have been proposed. At this stage of the appeals process, especially considering that the outcome of the appeal may render the issue of prejudgment interest moot, the Court finds that the interests of judicial efficiency would best be served by denying the request at this time. Should the Mississippi Supreme Court or Court of Appeals wish that this Court address the issue prior to their consideration of the appeal, the Court will, of course, do so.

¶47. Mersino did not file an appeal of the circuit court's denial of its Rule 60 motion. Yet, on appeal, Mersino argues in issue five of its brief that the circuit court erred in denying its motion to clarify.

¶48. On these facts, I believe the issue of what kind of interest and how it should be calculated is procedurally barred. The only issue regarding prejudgment interest that is properly before us is the issue presented by Roberts: whether the circuit court erred by awarding prejudgment interest to Mersino. Having said this, I readily agree with the circuit judge's statement, in denying Mersino's motion, that the method of interest calculation is integral to the enforcement of the judgment itself. I also am aware that since we are

21

affirming the circuit court's allowance of prejudgment interest, the issue of the kind of interest and the method of calculation must be resolved. I do not take issue with the law cited and discussed by the majority in paragraphs thirty-six and thirty-seven of its opinion. I simply disagree with the majority's decision to resolve the issue because—on this record—the issue is procedurally barred. This problem could have been avoided had Mersino appealed the denial of its Rule 60 motion and moved to consolidate that appeal with the appeal on the merits.

¶49. For the reasons presented, I would affirm the judgment but remand the case to the circuit court for proper calculation of the prejudgment interest.

**LEE, C.J., AND WESTBROOKS, J., JOIN THIS OPINION.**